UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY HOWARD,              )
                             )
            Plaintiff,       )
                             )      Case Number 03 C 8481
        v.                   )
                             )      The Honorable Wayne R. Andersen
CITY OF CHICAGO, et al.,     )
                             )      Magistrate Judge Ian Levin
            Defendants.      )
                             )
                             )

## CERTAIN DEFENDANTS' RESPONSE TO MOTION
## TO QUASH SUBPOENA DIRECTED TO GEORGE H. RYAN

Defendants Ronald Boffo, John Byrne, Jon Burge, Robert Dwyer, Frank Glynn, James Lotito, Daniel McWeeney, and John Palidino ("Defendants"), by and through their attorneys, Freeborn & Peters LLP, respond as follows to George H. Ryan's Motion to Quash ("Motion"):

## INTRODUCTION

As explained in detail below, the Court should deny Ryan's Motion for four reasons. First, Ryan did not support his claims of executive privilege with the necessary facts and supporting materials. He simply concludes that the privilege applies and states that he has no discoverable information. Second, Ryan waived any privilege by repeatedly discussing with the media and public certain alleged reasons for his pardons of Aaron Patterson, Leroy Orange, and Stanley Howard (collectively "Plaintiffs"). Third, the executive privilege does not apply here, because Defendants have an overwhelming need for the information that Ryan – and only Ryan – possesses. Put simply, if Plaintiffs are going to use Ryan's pardons at trial as proof of actual innocence, Defendants have the right to discover what drove Ryan's decision and what materials he did and did not consider. Only with this information can a trier of fact determine the weight

that should be given to the pardons. Finally, at a minimum, the Court should deny Ryan's Motion and require that he assert any privilege in response to specific deposition questions. This is how the Court handled the Motion to Quash filed by Ryan's former counsel, Jean Templeton.

## **BACKGROUND**

On November 11, 2005, Defendants subpoenaed George H. Ryan for a consolidated deposition in this lawsuit; *Howard v. City of Chicago* (No. 03 C 8481); and *Orange v. Burge* (No. 04 C 0168). The subpoenas also asked that Ryan produce all documents within his possession, custody, or control that relate to Patterson, Howard, and Orange's claims in these actions. (*See* Exs. 1, 3, and 4 to Ryan's Motions to Quash ("Motions").)

Ryan moved to quash each of the subpoenas, claiming that (i) the executive privilege shields him from the discovery process, and (ii) the subpoenas are "without basis, prejudicial to [him] and designed to harass." (Mot. at 2.) As explained in detail below, these arguments are meritless. The executive privilege is inapplicable here because the information Ryan possesses is critical to the claims and defenses in these lawsuits and cannot be obtained from any other source. Moreover, even if the privilege could possibly apply, Ryan and people acting on his behalf waived it long ago by discussing with the public various aspects of Ryan's decision to pardon the Plaintiffs on the basis of innocence.

Plaintiffs' claims against Defendants arise as a direct result of the executive pardon that Ryan granted to them. Thus, a brief background on each of Plaintiff's criminal cases is necessary.

In 1986, a jury convicted Plaintiff Aaron Patterson ("Patterson") for the brutal murders of Vincent and Rafael Sanchez; in 1985, Plaintiff Leroy Orange ("Orange") was convicted by a jury of his peers for the brutal murders of Rene Coleman, Michelle Jointer, Ricardo Pedro and a 10-year-old boy, Anthony Coleman; and in 1987 Plaintiff Stanley Howard ("Howard") was

convicted by a jury of his peers for the brutal murder of Oliver Ridgell.  In each case, the jury or the trial court found that there were no mitigating factors sufficient to preclude a sentence of death, and the respective trial court imposed a death sentence.  Patterson, Howard, and Orange appealed their convictions and death sentences to the Illinois Supreme Court.  The Supreme Court rejected their arguments and affirmed their murder convictions and death sentences.  *See*, *People v. Patterson*, 154 Ill.2d 414, 610 N.E.2d 16 (1993); *People v. Orange*, 121 Ill.2d 364, 521 N.E.2d 69 (1988); *People v. Howard*, 147 Ill.2d 103, 588 N.E.2d 1044 (1992).  All three spent the next several years pursuing post-conviction relief.  As of January, 2003, all three of their post-conviction petitions had not been adjudicated and were pending in the circuit court of Cook County.

While each Plaintiff awaited adjudication of his post-conviction petition, each Plaintiff filed a Petition for Executive Clemency, wherein they raised the same claims previously rejected by the juries at their criminal trials and by the Illinois Supreme Court – namely that they were innocent of the murders. (*See* Petitions for Executive Clemency by Patterson, Howard and Orange, attached as Group Ex. A).  Though Patterson, Howard, and Orange did not provide any new underline evidence in support of their claim of innocence, on January 10, 2003, Illinois Governor George Ryan abruptly granted Patterson, Howard, and Orange "innocence pardons" for their respective murder convictions.  Patterson, Howard, and Orange will undoubtedly attempt to introduce Ryan's "finding" at trial to bolster their claims of wrongdoing against Defendants and show that they were actually innocent of the crimes for which they were arrested and convicted. Therefore, the basis for Ryan's findings and the information he had to support those decisions are at the very core of Defendants' defenses in each case.

Moreover, each Plaintiff has alleged a claim for malicious prosecution.  (*See, Patterson* Amended Complaint Docket # 43 at & 89-90; *Howard* Amended Complaint Docket # 70 at &

186-191; *Orange* Amended Complaint Docket # 9 at & 87-88.)  These claims require that Plaintiffs establish as an element of the claim that the "proceeding" terminated in their favor. Since no jury, trial court, or appellate court has ever terminated the proceedings against Plaintiffs in their favor, the only evidence they could present at trial is the pardon.  Additionally, Plaintiffs concede that they intend on introducing the pardons as substantive evidence that they were innocent to establish their ' 1983 claim which alleges the denial of a fair trial.  (See, Plaintiffs' Memorandum of Law in Support of His Motions for A Protective Order and Motions to Quash the Subpoena for the Prisoner Review Board's Findings and Recommendation Concerning Plaintiff's Pardon ("Plaintiffs' Supp. Memo") at 3 [filed in all three cases simultaneously on 12/12/05].)  Thus, it is certain that each Plaintiff will waive the innocence pardon in front of a jury in an attempt to prove that they were innocent of their crimes.  If the pardon is admissible in their cases in chief, then certainly the basis for the pardon is, at a minimum, a matter worthy of discovery within the broad parameters of Rule 26.  Indeed, it should go without saying that such information would be "relevant" to the weight which a jury might choose to afford the pardon in evaluating the Plaintiffs' cases.

## ARGUMENT

### I.    Ryan Failed To Properly Raise An Executive-Privilege Objection.

The Court can dispose of Ryan's Motion for the simple reason that he did not come close to satisfying his burden to prove that the executive privilege applies here.  *See*, *e.g.*, *Ferrell v. U.S. Dept of Housing & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill 1998) (person asserting privilege must establish *prima facie* case for its application).

### A.    Ryan made no showing that any of the requested documents are privileged.

The caselaw is clear that for Ryan to avoid producing documents on the basis of executive privilege, he must:  (i) make a formal claim of privilege after personal consideration of

the problem, (ii) demonstrate by affidavit the precise reasons for preserving the confidentiality of the requested documents, and (iii) specifically identify and describe the documents sought to be protected from disclosure. *See U.S. v. Board of Educ. of City of Chicago*, 610 F. Supp. 695, 698 (N.D. Ill. 1984); *see also U.S. v. Hamilton*, 15 F.3d 350, 353 (7th Cir. 1994) (person claiming privilege has burden to prove all necessary elements); *Webb v. U.S.*, 2005 WL 697028, * 3 (N.D. Ill Mar. 21, 2005) (same).

Ryan did **none** of these things. Instead, he simply declared that "there is no likelihood that he could produce documents . . . that could lead to the discovery of admissible evidence." (Mot. at 3.) This conclusory assertion does not qualify as an appropriate assertion of the executive privilege, and the Court should deny Ryan's Motion on this basis alone. *See*, *e.g.*, *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) (subpoena could not be quashed where party asserting privilege failed to support its claim with specific information).

### B. Ryan cannot bar his deposition by simply stating that he has no discoverable information.

Like his argument to avoid producing documents, Ryan claims that he should not be deposed because "there is no likelihood that he could . . . provide deposition testimony that could lead to the discovery of admissible evidence." (Mot. at 3.) This argument has three problems. First, it is wrong. As Defendants established throughout this Response, Ryan – by definition – possesses information critical to Defendants' ability to defend themselves. He is the one who pardoned Plaintiffs. Second, Ryan's declaration ignores both the content of Plaintiffs' Complaints and the evidentiary value Plaintiffs will attempt to attach to Ryan's pardon of Plaintiffs at the trial in these cases. Were it not for Ryan pardoning these men, these cases would not be in this Court.

Third, Ryan's conclusory statement is legally meaningless and cannot provide a basis to quash his deposition. Indeed, courts have repeatedly held that a witness' "bare representation" that he or she knows nothing about the lawsuit at issue is insufficient to establish the "exceptional circumstance" necessary to "justify prohibiting a deposition altogether." *See*, *e.g.*, *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). At a minimum, Defendants are "entitled" to depose Ryan "to test his [purported] lack of knowledge." *See Steadfast Ins. Co. v. Auto Marketing Network*, 1999 WL 300231, * 2 (N.D. Ill. May 3, 1999) ("A witness cannot escape examination by claiming that he has no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge.") If Ryan truly knows nothing – which is impossible – and testifies as such, then there is no information to protect as privileged and Ryan's Motion is moot.

## II. Ryan Waived Any Executive Privilege By Voluntarily Discussing With The Media And Public The Pardons At Issue.

Even if the Court ignores the above-mentioned deficiencies, Ryan's Motion still fails because he waived any possible executive privilege by discussing in public Plaintiffs' pardons and the process he undertook to grant them. *See*, *e.g.*, *Shell Oil Co. v. Internal Rev. Ser.*, 772 F. Supp. 202, 209 (D. Del. 1991) (executive privilege can be waived by public disclosure). Indeed, during his announcement of the pardons at DePaul University Law School on January 10, 2003, Ryan personally discussed – at length – the process he took and at least some of the information he purportedly relied on in pardoning the Plaintiffs. Ryan exclaimed that he "must share with [the audience] some startling information" and then proceeded to discuss certain facts that he purportedly considered before pardoning Plaintiffs. (*See* News Release, DePaul University, January 10, 2003, "Text of Gov. Ryan's Jan. 10 DePaul College of Law Speech that Pardoned Four on Death Row - Provided by Ryan's Press Office" at 5-8, attached as Ex. B.) Among other

things, Ryan claimed to have considered fingerprint evidence, ballistic evidence, eye-witness testimony, the investigative work of Messrs. Protess and Ciolino (both of whom worked on Plaintiff Patterson's behalf), and the criminal justice system's overall failings. (*Id.*) This unprecedented disclosure of Ryan's deliberations was both voluntary and in complete disregard for confidentiality, thereby creating a complete waiver.

However, Ryan's public disclosures did not stop there. On January 15, 2003, he appeared as a guest on The Oprah Winfrey Show, along with Patterson's civil attorney, Flint Taylor. Again, Ryan discussed how he purportedly reviewed each Plaintiff's case, including allegations of "brutal beatings, electrocutions and suffocations." ( *See* Tr. of the 1/15/03 Oprah Winfrey Show at 8-9, 15, attached as Ex. C.) Ryan also responded to questions and requests for information made by Oprah's studio audience. (*Id.* at 15.)

At one point in the show, Ryan and Oprah had the following exchange about Ryan's basis for the pardons:

WINFREY: Well, many people are saying or thinking that you released – when you pardoned the four on Friday (Hobley, Patterson, Orange, and Howard) and the three were set free, there are people who, of course, say you released killers. I talked to the – the – some of the families, and we will hear from them later in the show. The families of the victims of those three men say you released killers.

Mr. RYAN: Well, those three people (Hobley, Patterson, and Orange) were charged certainly with killing and the never were really – they – *they were exonerated by the courts to some degree.*

WINFREY: How so?

Mr. RYAN: *Well, they were found to be innocent, with the facts, the – the DNA evidence that came through on some of them, the facts were there. A lot of professors sitting here and – and advisers of mine that were a – a part of that.*

WINFREY: So the four pardons, you looked at each one of those cases, examined each one of those cases, and determined each of those men to be innocent? So they are pardoned because they are innocent?

Mr. RYAN:    Right.  That's what their pardon is based on, innocence.

(*Id.* at 7-8; emphasis added.)

Ryan's statements are astounding given that no court has ever exonerated Patterson, Howard, Orange, and Hobley in any "degree."  Additionally, DNA evidence had not been an issue in their criminal cases and none of them even allege the existence of exculpatory DNA in these lawsuits.[1]  This underscores why Defendants should be entitled to know what information Ryan received, and, more important, where Ryan was getting the **false** information that apparently served as the basis for the pardons.  In light of what is at stake in these cases, Ryan should not be allowed to say these types of things in public, and then hide behind a purported privilege when Defendants seek to inquire further – especially given that Plaintiffs intend on using the pardons in their cases.

Ryan's reference during The Oprah Winfrey Show to "professors" and "advisers" is also interesting.  If professor Andrea Lyon and attorney Kurt Feuer are among these individuals (Ryan mentioned them specifically during his speech at DePaul University), Defendants have a

---

[1] Ryan has made other questionable comments about Plaintiffs.  For instance, during his speech at DePaul University, Ryan lamented how "unfortunate" it was that Howard would not be released from prison because he was incarcerated for an unrelated rape, robbery, and kidnapping case:

> However, the evidence in that case is also very troubling.  He has not yet petitioned for relief in that case.  I would recommend his lawyers do so, and I urge the next administration to pick up where I am leaving off.  That case may well be as tainted as his murder conviction.  If so, let us right those wrongs and quickly.  Let's promote justice.

(Ex. B at 8.)  Howard has steadfastly maintained that he is "innocent" of this unconscionable sexual assault as well. (*See* Statement of Stanley Howard entitled "The Armed Robbery, Home Invasion, Rape An (sic) Evidence of Innocence, attached as Ex. D.)  However, since the time of Ryan's statement and within the past 14 months, it has been scientifically proven through DNA evidence of the semen from the victim's rape kit in that case that **Stanley Howard, was in fact, the rapist**.  (*See* People of the State of Illinois Supplemental Objection To And Request To Deny The Petition For Expungement at "Exhibit B" DNA Results [filed in Case No. 84C13134], attached as Ex. E.)  This fact not only calls into question Howard's credibility and the weight one should place on Howard's protestations of innocence, it also calls into question the type of information that Ryan relied on in his pardon decisions.  This further illustrates the necessity of obtaining from Ryan what information he considered, whether it was reliable, and whether it only reflected one side of the story.

right to know.  After all, Ms. Lyon and Mr. Feuer have a financial stake in these civil cases.

Both of them represent Hobley and Mr. Feuer also represents Howard.[2] If Plaintiffs are going to

use the pardons as evidence in these cases, justice and fairness call for a full and open

examination of the complex web of relationships, influence, and information – whether reliable

or false – that contributed to Ryan's decision to grant innocence pardons.

Ryan was not, however, the only person publicly discussing Plaintiffs' pardons.  Besides

granting reporters access to the "war room" where Ryan and/or his team purportedly deliberated,

Ryan's aides also disclosed to the media:  (i) how information was packaged for Ryan, (ii) who

provided the information for Ryan to review, (iii) who lobbied Ryan during his deliberations, (iv)

which cases they found "weak," and (v) certain thoughts and deliberation of Ryan himself.

(Chicago Tribune article dated 1/12/03, attached as Ex. G.)

The above examples establish that Ryan has waived any claim of executive privilege

relating to Plaintiffs' pardons.  He cannot voluntarily disclose this information when he feels it

politically expedient, then cry "privilege" when he sees no personal benefit to discussing the

pardons.  *See Shell Oil*, 772 F. Supp. at 209 ("[w]here an authorized disclosure is voluntarily

made to a non-federal party, whether or not that disclosure is denominated 'confidential,' the

government waives any claim that the information is exempt from disclosure under the

deliberative process privilege"); *see also Sherman v. U.S. Dept. of Army*, 244 F.3d 357, 363 n.9

(5th Cir. 2001) ("the *Shell Oil* court was animated by a fear of empowering agencies to

selectively disclose materials publicly").

---

[2] Interestingly, Ms. Lyon currently is a "volunteer" on Ryan's pro bono criminal defense team.  (*See Ryan's dream team free, but at what price?*, Chicago Tribune article dated November 17, 2005 (reporting that Lyon was questioned about whether her work for Ryan is "a way of paying [Ryan] back" for all he has done to advance her causes), attached as Ex. F.)

### III.    The Executive Privilege Is Inapplicable Here.

The Court should still deny Ryan's Motion even if it assumes that he properly raised and did not waive the executive privilege.[3]  Put simply, this qualified privilege is easily overcome by the overwhelming need for the requested information and the lack of alternative sources.

### A.    Defendants are not seeking to challenge Ryan's ability to grant the pardons.

Ryan's statements notwithstanding (Mot. at 3), Defendants are **not** attempting to depose Ryan so they can later challenge his ability to pardon Plaintiffs.  Defendants simply want to discover the facts and circumstances surrounding those pardons.  This information will then allow the trier of fact to make an informed decision as to the weight, if any, the pardons should receive on the issue of Plaintiffs' "actual" innocence.

### B.    Defendants have demonstrated a substantial need for the information that Ryan, and only Ryan, possesses.

Although one would not know it after reading Ryan's Motion, the executive privilege is qualified – not absolute – and should be construed narrowly due to its derogation of the truth-seeking process.[4]  *See United States v. Nixon*, 418 U.S. 683, 710 (1974); *see also Cheney v.*

---

[3] Despite the fact that Ryan's Motion is faulty on several grounds and his deposition should proceed, the Court also has enough information here to rule on the merits of Ryan's ability to assert the deliberative process privilege over **any** of the information sought from him in this case.  *See, e.g., Evans v. City of Chicago*, 231 F.R.D. 302, 317 (N.D. Ill. 2005) (holding that although government failed to validly raise the deliberative process privilege, the privilege was nonetheless overcome by the police officer defendants' showing that there was a particular need for the documents in question).

[4] Ryan contends that "a civil litigant has no more right to take discovery of the deliberations of the Illinois governor than he does the justices of the Illinois Supreme Court or the judges of the United States Court of Appeals for the Seventh Circuit." (Mot. at 6.)  Besides being legally incorrect (the executive privilege is qualified), this comparison is untenable.  The judiciary renders decisions in public, based on publicly available law and evidence that is presented in public courtrooms and governed by rules of admissibility. Judicial decisions are also subject to many layers of review.  Ryan, on the other hand, made his pardon decisions in secret, based on whatever information and argument he chose to consider.  And, Ryan's decisions are not subject to court review.  Thus, the only way to glean information about them is through the civil discovery process.

*United States Dist. Court for the Dist. of Columbia*, 124 S. Ct. 2576, 2592 (2004) (the executive privilege is an extraordinary assertion of power "not to be lightly invoked").  In short, the privilege will not apply where the party seeking discovery "shows a sufficient need for the otherwise privileged material." [5]  *See Board of Educ. of City of Chicago*, 610 F. Supp. at 698. This qualification allows an executive to effectively discharge decision-making duties, while also ensuring that disclosure of protected material will be forthcoming in appropriate cases (like this one).  *See Nero v. Hyland*, 386 A.2d 846, 853 (N.J. 1978).

Five general factors bear on the "sufficient need" analysis:  (i) the requested material's relevancy, (ii) the availability of other evidence that would serve the same purpose, (iii) the seriousness of the litigation, (iv) the government's role in the litigation, and (v) the possibility of a chilling effect on the deliberative process.  *See K.L. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997); *Government Suppliers Consolidating Serv., Inc. v. Bayh*, 133 F.R.D. 531, 534 (S.D. Ind. 1990).  As demonstrated below, each factor militates strongly in favor of disclosure.

### i.)    The information requested from Ryan is highly relevant.

The information Defendants seek from Ryan regarding the basis for his decision to pardon Plaintiffs is not only relevant, but indeed, critical to Defendants' ability to defend themselves in these cases.  The strongest evidence Plaintiffs possess in support of their claims of innocence is the pardon Ryan granted them in the last days of his term as governor.  After all, no jury or court of law has ever found them "not guilty" of the murders – let alone innocent of them. The pardons will undoubtedly be touted by Plaintiffs at trial as proof that they are actually

---

[5] The privilege only extends to information that is deliberative in nature.  The privilege does not extend to factual or objective material, or documents that an agency adopts as its position on a given issue. *See K.L. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997); *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Indemnity Ins. Co. of North America*, 1989 WL 135203, at *2 (N.D. Ill. November 1, 1989). Thus, Ryan's attempt to quash the subpoena with respect to factual or objective material is a complete non-starter.

innocent of the crimes for which they were arrested and convicted despite the fact that Ryan's decision deviates from prior review of the evidence by the jury and the Illinois Supreme Court.[6] As a result, both the information considered by Ryan in rendering his decision, as well as any information that he rejected or failed to consider is critical. *See United States v. Board of Education of City of Chicago*, 610 F. Supp. 695, 700 (N.D. Ill. 1985) (decisions not made by government official may be extremely relevant in certain cases). If Plaintiffs can tell the jury that a governor deemed them innocent, then certainly Rule 26 – and its liberal policy of discovery – entitles Defendants to at least explore whether that decision was well considered and based on a thorough review of all information, or whether it was a perfunctory decision based upon a decidedly one sided presentation of the facts.[7]

### ii.) Ryan is the only source of the requested information.

Ryan completely misses the mark when he argues that "[e]vidence of underlying facts relating to any individual plaintiffs' arrest and interrogation can be obtained from other sources." (Mot. at 6.) Obviously, Defendants do not require Ryan's testimony to learn about Plaintiffs' arrest and interrogation. As stated above, Defendants need Ryan's testimony to explore the circumstances underlying Plaintiffs' pardon, a critical piece of evidence in this case. On that

---

[6] Plaintiffs unequivocally state that the pardons are "relevant and admissible" and that the "pardon[s] will be introduced to satisfy the elements" of their claims. (Pls.' Supp. Memo at 3.)

[7] Ryan's reliance upon *Hamilton v. Verdow*, 414 A.2d 914 (Md. 1980), is misplaced. In *Verdow*, the court only addressed the issue of whether an *in camera* document inspection would be inconsistent with the concept of executive privilege. The court held that it would not, and explained that the privilege "is for the benefit of the public and not the governmental officials who claim the privilege." The court also stated that after the inspection, the document at issue may or may not be discoverable. *See id.* at 563.

issue, Ryan is the only person who can provide the relevant information.[8]  Clearly Ryan's pardons of Plaintiffs are an issue in this matter and no other evidence will serve the same purpose as Ryan's testimony.  Ryan is the only person who could provide testimony regarding what constituted the entire body of evidence that was provided to him in preparation for his decision.  More important, as the sole decision maker, Ryan is the only person who can testify as to what information he relied upon – and what information he ignored – while making his decision to pardon the individuals.

Furthermore, as governor, Ryan had the exclusive power to grant pardons.  *See* Ill. Const. art. V, § 12.  Although Illinois legislation provides for the establishment of a Prisoner Review Board to hold hearings in regard to clemency requests and make confidential recommendations to the governor, the governor is not required to follow or even consider those recommendations. *See* 730 ILCS 5/3-3-2(6); Ill. Const. art. V, § 12.  After filing their petitions for executive clemency, Plaintiffs were given a public hearing before the Prisoner Review Board during which both Plaintiffs' attorneys and representatives from the Cook County State's Attorney's Office presented evidence.  After the hearings, the Board drafted a report of findings and recommendations ("Report") for Ryan in regard to Plaintiffs' clemency petitions.  These Reports have not yet been released to Defendants and are the subject of separate Motions to Quash Subpoenas filed by the Illinois Prisoner Review Board.

---

[8] The only other source of information that Ryan mentions is the deposition of Jean Templeton and the future deposition of Matt Bettenhausen.  He argues: "It is inconceivable that Gov. Ryan would have any discoverable information beyond what Ms. Templeton or Mr. Bettenhausen have already or will provide to the Defendants." (Mot. at 2.)  This assertion is baseless.  First of all, Matt Bettenhausen lives in California and has yet to be deposed.  Additionally, Ryan has not shown and cannot show that Bettenhausen's deposition would eliminate the need for Ryan's deposition.  Secondly, Templeton testified that she had "no role in connection with" Ryan's issuance of the pardons, she does not know who advised him on the pardons, and she does not know what information was gathered or what information was transmitted to Ryan in connection with his deliberation on the pardons.  (*See* 8/3/05 Dep. of Jean Templeton at 69-75, attached as Ex. H.)

Ryan was not present for the hearings. Therefore, Ryan's testimony is necessary to determine whether he reviewed the evidence presented at the hearings and the recommendations of the Board. In that regard, Board member Robert Dunne has reportedly stated, "that after sitting on the panels that heard the cases of Leroy Orange and Madison Hobley (two of the four death row inmates that Ryan pardon on January 10, 2003), he was 'particularly surprised' that Ryan granted pardons to them based on innocence." (*Chicago Sun-Times* article, "Prisoner review board members rip Ryan act," January 16, 2003, attached as Ex. I.) This statement, at a minimum, warrants an exploration into whether Ryan received all the evidence regarding each particular Plaintiff's claim, or if Ryan simply chose to ignore it. In sum, Ryan, and only Ryan, can testify as to what information he considered in granting the pardons.

### iii.) The *Patterson, Orange, Howard*, and *Hobley* cases are extremely important.

Ryan does not even attempt to dispute the seriousness of these cases. Nor could he. Plaintiffs have filed multi-million dollar lawsuits against Defendants claiming that they were framed and wrongfully convicted for crimes they did not commit. As this Court has repeatedly recognized in other contexts, the issues in these high profile cases demonstrate a particularized need that all relevant facts see the light of day, and certainly Ryan's testimony about the circumstances that led to Plaintiffs' pardons constitute a critical component of that inquiry.

### iv.) The government's role in the litigation.

Ryan and the State of Illinois are not parties to this case. However, Ryan's actions as Governor provided the impetus for these lawsuits. As Judge Gottschall noted, Ryan's innocence pardons provided a procedural mechanism for Plaintiffs to have the lawsuits adjudicated on the merits. *See, e.g.*, *Patterson v. Burge*, 328 F.Supp.2d 878, 897 (N.D.Ill. 2004). Thus, the City of Chicago and several of its present and former police officers are parties as a direct result of

Ryan's actions as the former Governor. Consequently, it cannot plausibly be disputed that Ryan's actions, in his role as Governor of the State of Illinois, play a critical role in these cases.

      **v.)**        **There will be no "chilling effect" if Ryan is deposed.**

Ryan makes the unsupported assertion that enforcement of the subpoena "will not only prejudice [him], but also will chill present and future governors who face the often unpopular, but critical task of examining individual cases and deciding if a pardon is appropriate." (Mot. at 6.) As an initial matter, Ryan is in no position to claim that the disclosure of any particular document or evidence will result in a chilling effect when he has not even attempted to describe the documents he possesses or explain how testimony concerning the case will impact on any executive decision-making in the future. (*See* Section I, *supra*.)

Secondly, Judge Schenkier has already rejected the very argument Ryan now relies upon. According to Judge Schenkier, there will be no chilling effect because pardon decisions are rarely relevant to civil litigation: "Most pardon decisions are never the subject of, or relevant to, any litigation: a governor's decision to issue a pardon (or to decline one) is not judicially reviewable, and it is the rare case where as here, a pardon decision is potentially relevant to issues raised in a civil lawsuit." *Evans v. City of Chicago* 231 F.R.D. 302, 317 (N.D. Ill. 2005) (internal citations omitted).[9]

Moreover, nobody can seriously dispute that Ryan's last-minute decision to empty Illinois' death row was a unique event. It is improbable that many other governors, if any, will follow this same course of action. Additionally, Ryan has already made several public

---

[9] The *Evans* decision is also relevant to this Court's consideration of the other factors needed to overcome the privilege. For example, the Court held "certainly the best evidence of the weight that should be accorded to the pardon, as proof of [plaintiff's] innocence, is the information and analysis on which it was based. And, that particular type of information is not available from any other sources. Thus, both the relevance of the documents and the unavailability of the precise information in question from other sources weighs in favor of a finding of a particularized need." *Evans*, 231 F.R.D. 317.

comments in regard to Plaintiffs' pardons without expressing any concern that they will have a chilling effect on the actions of future governors. Consequently, if Ryan is asked questions about his specific decision and course of action, similar to those that he voluntarily answered on the Oprah Winfrey Show, there will be no prejudicial chilling effect on other governors.

## IV. Ryan Should Be Required To Assert The Executive Privilege In Response To Specific Questions During His Deposition.

Even if the Court believes that the executive privilege may possibly apply, Ryan's deposition should not be barred in its entirety. The Court should require Ryan to sit for his deposition and object to the specific questions that he believes implicate the executive privilege. This will allow Defendants "to develop circumstantial facts in order to explore the propriety of the assertion of the privilege." *See Kaiser v. Mutual Life Ins. Co.*, 161 F.R.D. 378, 380 (S.D. Ind. 1994) ("Protective orders prospectively suppressing depositions are rarely granted; deponents are expected instead to assert their objections during the deposition, and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection.")[10]; s*ee also* Charles Allen Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 2035 at 264-65 (2005) (same).

The Court adopted this approach when Ryan's former counsel, Jean Templeton, moved to quash her deposition on "executive privilege" grounds. (*See* Docket # 497 in *Hobley v. Burge*, Case No. 03 C 3678.) In denying that motion, the Court correctly noted that Defendants were not "second guess[ing]" Ryan's prior power to grant clemency. (*See* Tr. of 6/17/05 hearing before Judge Brown at 19, attached as Ex. K.) Instead, "the [D]efendants want to find out what

---

[10] That *Kaiser* addressed this issue in the context of protective orders does not detract from its value, because "[a] non-party's motion to quash a subpoena is, in essence, the same as a motion for a protective order that discovery not be had under Rule 26(c)." *See Moore's Federal Practice*, Third Ed. § 45.04[3][a] at 45-38 (2005).

the basis of the, quote, innocence decision was … [I]t is not that they are asking anybody to undo that or review it or change it." (*See id.*)  The Court further explained that "there are areas that could be inquired . . . about that don't sound to me as if there is any powerful privilege associated with it." (*See id.* at 20.)  The same holds true for Ryan's deposition, and he should be required to honor Defendants' valid subpoena.

## V.     Ryan's Claims Of Harassment And Substantial Hardship Are Meritless.

In addition to his "executive privilege" argument, Ryan claims that the subpoena should be quashed because it is "designed only to harass" him, and responding to it "will work substantial hardship" due to his pending criminal trial.  (Mot. at 2.)  Both of these assertions are baseless.

First, the claim of harassment is empty rhetoric, devoid of factual support.  Throughout this Response, Defendants have shown an absolute need to depose Ryan and learn what information he possesses concerning Plaintiffs' pardons.  If Defendants did not believe the deposition was necessary, they certainly would not waste their time on it given all of the other tasks to be completed in these cases.

Second, any possible "hardship" can be avoided by scheduling Ryan's deposition for a date after his criminal trial ends, something that Defendants are more than willing to do.  A recent newspaper article estimated that the trial will conclude in February or March 2006.  (12/6/05 *Daily Herald* article, attached as Ex. K.) [11]  If the Court prefers that the deposition be

_____

[11] Defendants want to make clear that the timing of their subpoena was not designed to interfere with Ryan's criminal trial.  Defendants issued the subpoena because the *Hobley* defendants had previously issued a subpoena to Ryan on March 29, 2005, well before the commencement of his trial, and the Court was already dealing with Ryan's motion to quash in that case.  Defendants did not want the Court to rule on that issue without being heard and having a record made on their behalf.

conducted sooner, there are other options.  Ryan's attorney stated in open court that Ryan's trial is not being conducted on Fridays.  Thus, Defendants are willing to work with Ryan's schedule and conduct the deposition on a mutually convenient Friday.

Finally, the Court should note that Ryan never explains, and Defendants cannot discern, how he will be prejudiced by being required to give a deposition in these cases.   Ryan is no longer a public official, so the concomitant issues that arise in seeking the deposition of a sitting office holder are inapplicable.   He currently is akin to any other citizen who faces some inconvenience by being required to give testimony in pending litigation regarding relevant issues.   Moreover, Defendants are not seeking his deposition for the hollow and fleeting "publicity value" of deposing a well known figure.  To the contrary, Ryan's deposition is necessary to the defense of these cases.  Defendants will suffer hardship and their rights to defend these cases will be prejudiced if this Court unnecessarily bars his deposition.  Given the importance of the litigation, Ryan's central role in the process, and the fact that Plaintiffs intend on using Ryan's pardons to show they are "innocent," Ryan is actually in a lesser position to claim prejudice than any of the scores of other witnesses who have already provided testimony in these cases.   As a result, Defendants have demonstrated a particularized need for Ryan's documents and his deposition.

## **CONCLUSION**

Accordingly, for all of the foregoing reasons, Defendants respectfully request that the Court deny George Ryan=s Motion to Quash Subpoena.

Respectfully submitted,

Ronald Boffo, John Byrne, Jon Burge, Robert
Dwyer, Frank Glynn, James Lotito, Daniel
McWeeney, and John Palidino


By:  ___/s/ Terrence J. Sheahan_____
            One of Their Attorneys


Richard T. Sikes, Jr.
Michael P. Kornak
Terrence J. Sheahan
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000

Dated:  January 6, 2006

## CERTIFICATE OF SERVICE

The undersigned, being one of the attorneys of record in the above cause, certifies that he this day caused a copy of the attached **Certain Defendants' Response To Motion to Quash Subpoena Directed to George H. Ryan** to be electronically served via CM/ECF to the following registered users listed below:

G. Flint Taylor
Joey L. Mogul
Michael E. Deutsch
People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60622
Fax: (773) 235-6699

Standish E. Willis
Law Office of Standish Willis
407 S. Dearborn Street
Suite 1395
Chicago, Illinois 60604
Fax: (312) 554-1012

Demitrus Evans
Law Office of Demitrus Evans
621 Sheridan Road, Suite G
Evanston, Illinois 60202
Fax: (847) 733-9737

Eileen M. Letts
Martin P. Greene
Kevin T. Lee
Greene and Letts
111 Washington Street
Suite 1650
Chicago, Illinois 60602
Fax: (312) 346-4571

Terrence Burns
Harry N. Arger
Paul Michalik
Daniel M. Noland
Dykema, Gossett, Rooks, Pitts
10 S. Wacker, Suite 2300
Chicago, Illinois 60606
Fax: (312) 876-1155

Patricia Bobb
Patricia C. Bobb & Associates
833 W. Jackson Blvd.
Suite 200
Chicago, Illinois 60607
Fax: (312) 829-3367

and via United States mail, postage prepaid to the below-listed parties, by depositing in the mail box located at 311 S. Wacker Drive, Chicago, Illinois prior to 5:00 p.m. on January 6, 2006:

1

| Patrick T. Driscoll, Jr.<br>Deputy State's Attorney<br>Chief, Civil Actions Bureau<br>Daley Center, Room 575<br>Chicago, Illinois 60606<br>Fax: (312) 603-5735 | Ronald Rascia<br>Assistant Attorneys General<br>General Law Bureau<br>100 W. Randolph St., 13th Floor<br>Chicago, IL 60601 |
| --- | --- |
| Jack S. Tenenbaum<br>Sachnoff & Weaber, Ltd.<br>10 S. Wacker Drive<br>40th Floor<br>Chicago, IL 60606 | |

_____/s/ Terrence J. Sheahan_____
Terrence J. Sheahan

**Dated:    January 6, 2006**