UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case Number 03 c 8481 |
| v. ) | |
| ) | The Honorable Wayne Andersen |
| CITY OF CHICAGO, et al., ) | |
| ) | Magistrate Judge Geraldine Brown |
| Defendants. ) | |

**CERTAIN INDIVIDUAL DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION AND MEMORANDUM OF LAW
TO ENFORCE SETTLEMENT AND FOR SANCTIONS**

Defendants, Ronald Boffo, Jon Burge, John Byrne, Robert Dwyer, Frank Glynn, James Lotito, Daniel McWeeney, and John Paladino ("Defendants"), by their attorneys, Freeborn & Peters LLP, respond to Plaintiff's motion and memorandum of law to enforce settlement and for sanctions, as follows:

### I. INTRODUCTION

The Plaintiff claims that he and the City of Chicago ("City") agreed to settlement and that the City reneged on that agreement. Plaintiff seeks to enforce the alleged agreement and impose "punitive sanctions" on the City. If Plaintiff's motion fails, he seeks "issue related sanctions" against not only the City, but also against individual police officer Defendants who were not involved in the settlement negotiations. Sanctions proposed against the City for its perceived misconduct cannot be lawfully extended against separate individual co-defendants who had no role in the criticized conduct.

## II. BACKGROUND

1. In describing the alleged settlement, Plaintiff admits to agreeing with the City that terms "would be held confidential at the City's request, including from other counsel in the cases, including the attorneys for the individual City Defendants for a limited period of time."[1]

2. In setting forth "facts" in support of enforcing settlement, Plaintiff lists numerous conferences, meetings, phone calls and other exchanges related to settlement negotiations between his attorneys and the City. Plaintiff argues these many contacts with the City demonstrate an oral agreement. Notably absent from this description of negotiations is any mention of participation by attorneys for individual police officers.

3. Plaintiff now demands "an order striking any and all agreements and court orders entered regarding discovery and/or trial made while the Plaintiffs awaited presentation of the settlement."[2]

4. Plaintiff's motion also demands an order "barring their police Defendants from repudiating the Fifth Amendment at trial."[3]

5. Plaintiff's memorandum then modifies this demand slightly by seeking "an order that the individual City Defendants be precluded from coming off the Fifth Amendment at trial with regards to questions pertaining to the claims against the City."[4]

---

[1] Plaintiff's memorandum of law in support of the motion to enforce and for sanctions ("Memorandum"), p.3.

[2] Id. at 10. Identical motions were filed by Plaintiffs Madison Hobley, 03 C 3678, and Leroy Orange, 04 C 00168. Similar responses have likewise been filed before their respective judges.

[3] Plaintiff's motion to enforce settlement and sanctions ("Motion"), p. 2.

[4] Plaintiff's Memorandum, p. 10. Plaintiff fails to explain how this sanction differs from that absolute bar on police Defendants' testimony requested in his motion.

6. Plaintiff seeks these sanctions directly against individual police officer Defendants who did not participate in settlement talks.

### III. ARGUMENT

**A. Agreements and Court Orders Regarding Discovery and/or Trial Must Not Be Stricken.**

7. Plaintiff cannot seek to sanction individual Defendants based on allegations of wrongdoing against another party (i.e., the City).

8. On November 7, 2006, certain individual Defendants filed their motion to bar certain witnesses and to compel others for deposition before Magistrate Judge Brown. (*See* Docket # 349.)

9. Plaintiff was ordered to respond by November 15, 2006, and all parties were ordered to meet with Magistrate Brown for a deposition scheduling conference on November 14, 2006. (Docket # 357.)

10. On November 14, 2006, a deposition scheduling conference was held and Plaintiff was ordered to confirm the schedule by letter with a copy to the Court. (Docket # 358.) At that conference, Plaintiff agreed to a substantial reduction of the number of previously claimed 404(b) witnesses. Thereafter, the five remaining undeposed 404(b) witnesses were listed in the scheduling letter prepared by Plaintiff's attorneys pursuant to court order. (Ex. A, November 15, 2006 letter of Tenenbaum.)

11. Because Plaintiff struck all of the 404(b) witnesses that the individual Defendants sought to bar and struck many others whose depositions were to be compelled, Plaintiff ignored the Court's order to respond in writing to the individual Defendants' motion to bar.

12. On November 27, 2006, Magistrate Brown ordered Plaintiff to identify which of the five remaining undeposed 404(b) witnesses he would present for deposition and to provide

3

last known addresses for those claimed 404(b) witnesses who would not appear without subpoena. (Docket # 381.) The individual Defendants pursued compliance with this court order. (Ex. B, Letters of Levy on December 20, 2006 and December 28, 2006.) Again, the court order was ignored and the individual Defendants were completely stonewalled.

13. The individual Defendants moved for compliance with court order and, following argument on January 8, 2007, Magistrate Brown gave Plaintiff a final deadline to comply: "Defendants' motion to bar certain witnesses and to compel others for deposition is entered and continued to January 18, 2007, at 9:00 a.m. By noon on January 17, 2007, Plaintiff shall identify dates of depositions of the remaining 404(b) witnesses that Plaintiff intends to present at trial." (Docket # 388.)

14. Because the individual Defendants were not negotiating settlement, but were instead prosecuting motions to address Plaintiff's discovery lapses, Plaintiff sought the protection of a stay of proceedings. Three days after Magistrate Brown's deadline order, all discovery, including all motions, were stayed. (Docket # 283.)

15. Entry of the stay allowed Plaintiff to avoid by hours a final deadline regarding his claimed 404(b) witnesses that was literally years in the making. But eluding the court's deadline was apparently not enough; now Plaintiff demands an order that would strike prior hard-earned agreements and court orders limiting 404(b) testimony.[5]

16. Strangely, Plaintiff now admits to duping the very individual Defendants that he seeks to sanction. Plaintiff states he was "forced to . . . construct excuses and arguments to

---

[5] The individual Defendants do not know specifically what other agreements and court orders that Plaintiff wishes to strike because Plaintiff's motion and memorandum fails to specify same.

4

convince Magistrate Brown to delay discovery motions and to get the unknowing defense lawyers to cancel depositions."[6]

17. The individual Defendants agree that the "excuses" used by Plaintiff to avoid discovery were indeed "constructed." However, this understated admission does not adequately describe the enormous selfishness shown by Plaintiff in first agreeing to depositions and then canceling them, misleading the Court and avoiding any discovery that did not gain some advantage.

18. Though Plaintiff claims he made excuses regarding discovery "to placate the City,"[7] in truth the Plaintiff demanded that depositions of individual Defendants go forward during this time frame.[8] Only depositions sought by the individual Defendants were ducked or unceremoniously cancelled at the last moment.[9]

19. One can reasonably infer from Plaintiff's actions during "negotiations," that he simply avoided those depositions that might weaken his bargaining position, while deposing high profile individual Defendants to keep up the pressure to settle. In seeking to now set aside hard-earned agreements and court orders limiting 404(b) witnesses as a sanction, Plaintiff seeks reward for his own bad behavior, and to punish individual police Defendants who were completely uninvolved in any settlement discussions.

---

[6] Plaintiff's Memorandum, p. 10-11. Translation: Plaintiff lied about the reasons for last minute cancellation of 404(b) witness depositions.

[7] *Id.* p. 10.

[8] Depositions: McGuire 11; 16/06; Bosco 12/01/06; Madigan 12/04/06; Martin 12/11/06; Binkowski 12/14/06; Byrne 12/15/06; and Dignan 12/29/06.

[9] Canceled depositions: Howard, Fry, Byrd, Parker, Duncan, Young, Washington, Jamison, Moore, Walton, Kidd, Banks, White, and Ross.

20. In conclusion, Plaintiff's request for these sanctions is unwarranted where the agreements and court orders limiting 404(b) evidence were reached because of motions prosecuted by individual police Defendants who were not participants in settlement talks.

### B. The Individual Defendants Must Be Allowed To Meaningfully Defend Themselves At Trial.

21. In the related case of Leroy Orange, 04 C 00168, the Court ruled that an individual Defendant who initially relied on his Fifth Amendment right against self-incrimination could waive that privilege and testify substantively based upon changes in circumstances. McWeeny is a Defendant in both *Orange* and the instant case. For McWeeny, that change in circumstance was a grant of immunity by the Office of the Special Prosecutor ("OSP") with sufficient assurances that answers or testimony he gave would not be used against him.[10] For the other individual Defendants who have likewise waived their Fifth Amendment privilege and decided to testify, the changes in circumstances were the conclusion of the OSP investigation, dismissal of the grand jury without indictment, and the publishing of the OSP report which found both Howard's and Orange's claims to lack credibility. As with McWeeny, these other individual Defendants now will or have taken "positions on many of the factual issues in this case. This act is not futile because it advances consideration of the factual issues in this case."[11]

22. Plaintiff now seeks to use the alleged failure to settle as a pretext to evade Judge Holderman's order in *Orange* that individual Defendants can waive their previously invoked Fifth Amendment rights and substantively testify to contradict Plaintiff's charges.

---

[10] Order of Judge James f. Holderman, Docket # 202.

[11] *Id.* at p. 2.

6

23. Recent depositions reveal Plaintiff's attorneys were upset that individual Defendants were now answering questions and taking meaningful positions on factual issues. In depositions consolidated with *Hobley* and *Orange* for discovery, Attorney Taylor made many speeches in the depositions of several individual Defendants who waived their Fifth Amendment rights. He tried to intimidate the Defendant witnesses with frequent references to federal investigations and to berate their lawyers for not fully grasping the danger of choosing to testify. (*See* Ex. C, excerpts of the deposition of John Byrne.) Taylor's phony explanation was to make sure the record showed a knowing waiver by the individual Defendants of their Fifth Amendment rights.[12] In short, Plaintiff's concern for those he is suing was something less than heartfelt.

24. In truth, Plaintiff's attorneys preferred the old scenario. They succeeded in having a special prosecutor appointed to conduct a criminal grand jury investigation of those police officers the Plaintiff's attorneys were simultaneously suing in civil court. Individual Defendants were in an untenable predicament, left with a classic Hobson's choice between bad and worse. But the content of the OSP report changed the status quo and the individual police officer Defendants understand that while risks remain, the playing field has leveled.

25. These individual Defendants abhorred "taking the Fifth." Individual Defendants that played no role and are not responsible for anything that occurred during settlement negotiations simply want to defend themselves. Plaintiff's request for sanctions is just another clever ploy aimed to prevent that.

---

[12] One is reminded of Mr. Taylor's prior efforts to disqualify Freeborn & Peters. In *Orange*, he argued that by McWeeny choosing to testify, the firm allowed McWeeny to take actions that were not in his best interest.

## IV. CONCLUSION

26. It is no small irony that lawyers who crusade for civil liberties when convenient are so quick to clamor for catastrophic sanctions against all Defendants for the perceived failings of one. Plaintiff demands these extreme sanctions all the while acknowledging that these same individual Defendants and their "unknowing" lawyers had absolutely no role in the allegedly sanctionable conduct.

27. It is with mammoth irony that, although Plaintiff has admitted falsehoods to avoid the taking of discovery (to the prejudice of individual Defendants), and that he continues to search for some way to prevent those same individual Defendants from testifying, that Plaintiff now asks these same Defendants to join in the enforcement of an alleged settlement. (*See* Ex. D, Taylor letter of February 27, 2007.) Plaintiff's letter makes less than subtle threats of federal prosecution "for perjury, RICO, obstruction of justice, and conspiracy," and that "pensions will be attacked." Such thinly disguised threats of criminal prosecution used to coerce settlement of a civil claim toys with the most basic ethics.

WHEREFORE, for all the reasons stated herein, Defendants, Ronald Boffo, Jon Burge, John Byrne, Robert Dwyer, Frank Glynn, James Lotito, Daniel McWeeney, and John Paladino, respectfully request that this Honorable Court deny Plaintiff's request for "issue-related" sanctions in its entirety.

Respectfully submitted,

/s/ Richard B. Levy
Richard T. Sikes, Jr.
Richard B. Levy
Michael P. Kornak
Terrence J. Sheahan
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677

312/360-6000

*Counsel for Defendant Ronald Boffo,
Jon Burge, John Byrne, Robert Dwyer,
Frank Glynn, James Lotito, Daniel
McWeeney, and John Paladino*

Dated: March 21, 2007

## CERTIFICATE OF SERVICE

The undersigned, being one of the attorneys of record in the above cause, certifies that he this day caused a copy of *Certain Individual Defendants' Response To Plaintiff's Motion And Memorandum of Law To Enforce Settlement And For Sanctions* to be served upon the attorneys listed below via the Northern District of Illinois, Eastern Division, ECF filing system, and a courtesy copy of same delivered to the chambers of Judge Andersen on this 21st day of March, 2007.

Kurt H. Feuer
Jonathan I. Loevy
Arthur R. Loevy
Michael I. Kanovitz
Loevy & Loevy
312 North May Street, Suite 100
Chicago, IL 60607
Fax No. 312.243.5902

Patrick T. Driscoll, Jr.
Louis R. Hegeman
Office of the Cook County
States Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
Fax No. 312.603.5735

Samuel Tenenbaum
Bluhm Legal Clinic
357 East Chicago Avenue
Chicago, Illinois 60611
Fax No. 312.207.6400

Ms. Elizabeth Ekl
James G. Sotos & Associates, Ltd.
550 East Devon Avenue, Suite 150
Itasca, IL 60143
Fax No. 630.773.0980

Martin Peter Greene
Eileen M. Letts
Greene and Letts
111 Washington Street
Suite 1650
Chicago, IL 60602
Fax No. 312.346.4571

Terrence M. Burns
Harry N. Arger
Paul A. Michalik
Daniel M. Noland
Dykema, Gossett, Rooks, Pitts
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60603
Fax No. 312.876.1155

G. Flint Taylor, Jr.
Joey L. Mogul
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 60622
Fax No. 773.235.6699

James R. Figliulo
Figliulo & Silverman
Ten South LaSalle, Suite 3600
Chicago, IL 60603
Fax No. 312.251.4610

/s/ Richard B. Levy